# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEWELL DEAN S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 18-2205-JWL |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff claims the ALJ erroneously failed to consider her medically determinable impairments of carpal tunnel syndrome, peripheral neuropathy, and back pain; erred in weighing the medical opinions; erred in assessing Plaintiff's residual functional capacity (RFC); and erred in finding that Plaintiff can perform other work.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the

3

burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues as presented in Plaintiff's Brief.

## II.     Medically Determinable Impairments

Plaintiff claims the ALJ did not consider her medically determinable impairments; of carpal tunnel syndrome which was diagnosed by an EMG (electromyogram) study (Pl. Brief 14),[2] of peripheral neuropathy which was diagnosed on November 3, 2015 by an Advanced Practice Registered Nurse (APRN) performing a monofilament test, and of back pain medically determined by an imaging study performed on November 3, 2016. Id. at 15. The Commissioner argues that the ALJ's failure to find these impairments severe was a reasonable interpretation of the record evidence. (Comm'r Br. 8). She argues that none of Plaintiff's treating providers assessed Plaintiff with carpal tunnel syndrome during the adjudicated period, id. at 9, that during the relevant period Plaintiff did not complain to her treating providers of neuropathy symptoms and that an APRN is not an acceptable medical source qualified to diagnose a medically determinable impairment. Id. at 10. Finally, she points out that back pain is a symptom, not an

---

[2] Plaintiff did not paginate her Social Security Brief, so the court uses the page numbers assigned by the software it uses to read the .pdf files stored in its Case Management/ Electronic Case Filing (CM/ECF) system.

impairment, that the ALJ found that Plaintiff has the severe impairment of inflammatory arthritis and she suggests that such an impairment is capable of producing back pain. (Comm'r Br. 11).

In her Reply Brief, Plaintiff responds that she consistently reported symptoms of carpal tunnel syndrome and neuropathy and reported these diagnoses to her new providers when she changed providers. (Reply 1). She reiterates her arguments regarding diagnosis with each of these impairments and argues that she is not required to expend her limited resources on confirmatory diagnoses, but that it is the ALJ's duty to further develop an inadequate or insufficient record, and if additional testing was necessary he should have ordered it. Id. at 2-6.

### A. Step Two Standard

An impairment is not considered severe if it does not significantly limit Plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, Plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d at 751. However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's

medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent Plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

**B.    Analysis**

The ALJ found that Plaintiff has "severe" impairments of inflammatory arthritis, obesity, asthma, and depression. (R. 19). He found Plaintiff also has the medically determinable impairments of Raynaud's syndrome and diabetes mellitus which are not "severe" within the meaning of the Act and regulations. Id. The ALJ specifically found "no indications that the claimant's diabetes has resulted in any complications, such as peripheral neuropathy." Id.

The court finds no error in these findings. As Plaintiff suggests, Dr. Tahir-Kheli signed a report on May 23, 2011 that referred to "a recent EMG study for [Plaintiff's] upper extremity due to complaint of numbness and tingling in her hands. The EMG study showed evidence of mild carpal tunnel syndrome on the right side, with the left median motor sensory nerve study being normal." (R. 798). Plaintiff protectively filed her SSI application on September 1, 2014 alleging disability beginning September 1, 2014. (R. 36). Because the Commissioner is required to develop the medical record beginning with the date of filing when the claimant alleges that is the date her disability began, 20 C.F.R. § 416.912(d), the relevant period in this case is September 1, 2014 through February 28, 2017, the date of the ALJ's decision. (R. 26).

Dr. Tahir-Kheli's report was issued more than three years before the relevant period in this case. As the Commissioner argues, the court is unable to find any medical

6

record in this case record diagnosing Plaintiff with carpal tunnel syndrome. And Dr. Tahir-Kheli's report does not constitute, nor does it contain, a diagnosis of carpal tunnel syndrome, because "<u>evidence of</u> mild carpal tunnel syndrome on the right side" (R. 798) (underline added) is not a diagnosis of carpal tunnel syndrome. On this record Plaintiff has not demonstrated that carpal tunnel syndrome is a medically determinable impairment applicable to her, much less that it is "severe" within the meaning of the Act and regulations.

Contrary to Plaintiff's argument that the ALJ did not <u>consider</u> peripheral neuropathy, he specifically found no indication that her diabetes has resulted in peripheral neuropathy. (R. 19). The question for the court then, is whether substantial record evidence supports this finding despite Plaintiff's report that peripheral neuropathy causes her to trip when walking, and her assertion that her treatment provider, Ms. Thompson diagnosed that impairment with a monofilament test. (Pl. Br. 15) (citing R. 54, 721-26). The court finds it does.

To be sure, Plaintiff testified that she has numbness in her feet which causes her to trip, but that she has always caught herself before she has fallen. (R. 54). However, beyond the fact that Ms. Thompson is not an acceptable medical source authorized to diagnose an impairment under the regulations in effect when Plaintiff's claim was filed,[3] the treatment record to which Plaintiff cites does not contain a diagnosis of peripheral

---

[3] The Social Security Administration has recognized APRNs as acceptable medical sources "for claims filed on or after March 27, 2017." <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5,433-01, 5,845-46 (January 18, 2017) (codified at 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7)).

7

neuropathy. The entirety of Ms. Thompson's treatment note upon which Plaintiff appears to base her argument that she was diagnosed with peripheral neuropathy states, "PODIATRIC: BILATERALLY~ monofilament: reduced sensation bilat 5th digits, all other points WNL." (R. 723). While the note appears to reflect that Ms. Thompson performed a monofilament test on Plaintiff's feet and that test revealed reduced sensation on the 5th toe on both feet but within normal limits elsewhere, Ms. Thompson did not diagnose peripheral neuropathy. There is no indication of such a diagnosis in either the "Assessments" or the "Treatment" section of Ms. Thompson's treatment note. (R. 723-24). In fact, the "Assessments" section contains an assessment of "Type 2 diabetes mellitus <u>without complications</u>." Id. at 723 (underline added).

Plaintiff's argument regarding back pain produces a similar result. As the Commissioner argues, pain is a symptom not an impairment. And, the court is aware of no imaging study which can reveal pain--certainly not a CT scan. Plaintiff admits as much in her Reply Brief when she adjusts her assertion and argues that her "back <u>impairment</u> was medically determined by a CT scan performed on November 3, 2016." (Reply 6) (underline added). However, the ALJ recognized that Plaintiff has the severe impairment of inflammatory arthritis (R. 19), an impairment which can produce back pain, and he related her chronic back pain to that impairment. Id. at 22 (Plaintiff "testified that her psoriasis is largely controlled with methotrexate," but indicated "that she continues to have chronic pain and swelling in her lower back."). As the decision also suggests, Plaintiff testified at the hearing that her back pain was related to her rheumatoid arthritis. (R. 40-41). The ALJ found that Plaintiff's medically determinable

impairment could reasonably be expected to cause her pain but that her "statements concerning the intensity, persistence and limiting effects of [her pain] are not entirely consistent with the" record evidence, and discounted her statements for that reason. (R. 22). Plaintiff does not even argue that it was error to discount her statements concerning the intensity, persistence, and limiting effect of her pain. It is clear the ALJ considered Plaintiff's alleged pain and found it not as limiting as alleged. More is not required.

Plaintiff has shown no error in the Commissioner's consideration of her alleged carpal tunnel syndrome, peripheral neuropathy, or back pain.

## III. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in weighing the treating source opinions of Dr. Hetlinger and Dr. Powell, and the non-examining source opinion of Dr. Brockenbrough. Specifically, she argues that the reasons given to discount Dr. Hetlinger's and Dr. Powell's opinions are erroneous, and that the ALJ did not weigh the opinions in accordance with all the regulatory factors provided for weighing medical opinions. (Pl. Br. 16-21). The Commissioner argues that the ALJ properly weighed the medical opinions and that substantial record evidence supports the weight accorded to each opinion. She also points out that the ALJ accorded great weight to the opinion of Dr. Al-Shathir, the physician who performed a consultative examination at the request of the state agency, and that his reasons for doing so are supported by the record evidence.

### A. **Standard for Evaluating Medical Opinions**

For claims filed before March 17, 2017 as in this case, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[4] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. <u>Id.</u> § 416.927(c); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir.

---

[4]The regulations during the applicable period defined only three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. § 416.902 (2016).

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. <u>Id.</u>

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but nevertheless provides a medical opinion. <u>Id.</u>

10

1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B. The ALJ's Findings

The ALJ accorded great weight to the non-examining source opinions of the state agency medical consultant, Dr. Brockenbrough, and the state agency psychological consultant, Dr. Kaspar, finding their opinions well-explained, well-supported by the evidence, and consistent with the record as a whole. (R. 24). He also accorded great

weight to the opinions of the consulting psychologist, Dr. Kent, and consulting physician, Dr. Al-Shathir, each of whom examined Plaintiff at the request of the agency. He explained that "these opinions are well-supported by the findings of these doctors, and are consistent with the other medical evidence." (R. 24). The ALJ accorded little weight to Dr. Hetlinger's opinion because it was "highly inconsistent" with the record evidence, it "appear[ed] to be largely based upon the claimant's own subjective reporting concerning her symptoms," and because the findings in Dr. Hetlinger's medical records do not support "such a degree of limitation." Id. The ALJ stated he gave little weight to Dr. Powell's opinion "[f]or similar reasons." Id.

### C. Analysis

Plaintiff first argues that Dr. Hetlinger's opinion is, in fact, supported by his treatment records because he "regularly examined the plaintiff and documented his objective findings, including lesions and edema uncontrolled by medication (R. 467-483, 490-504, 532-712, 734-748)." (Pl. Br. 16). However, the records cited by Plaintiff do not support her assertions. First, none of the records cited reflect an assertion (or even an implication) that Dr. Hetlinger suggested that Plaintiff's psoriasis lesions or her edema were "uncontrolled by medication." Plaintiff's lesions and edema were not entirely eliminated by taking medication throughout the relevant period, but Plaintiff cites no authority that a condition must be eliminated to be considered controlled. Medical dictionaries define the verb "control" variously, as "To regulate, restrain, correct restore to normal," Stedman's Medical Dictionary 389 (26th ed. 1995); "to reduce the incidence

13

or severity of esp. to innocuous levels," Merriam-Webster's Medical Dictionary 150 (2006); "to hold in restraint; check," Compact Am. Medical Dictionary 104 (1998).

Further, pages 467-83, and 490-504 of the record reflect a visit by Plaintiff to the emergency room complaining of abdominal pain with diarrhea and vomiting, and do not relate to Plaintiff's ongoing condition. Pages 734-48 reflect another visit to the emergency room complaining of congestion. Pages 532 through 712, however, are Dr. Hetlinger's treatment records from July 22, 2014 through October 27, 2015, and although they occasionally indicate the presence of lesions or edema, they do not indicate these conditions are uncontrolled by medication or are of disabling severity. Most of the treatment records record "no edema." (R. 554, 576, 585, 595-96, 598, 650, 678, 699, 711). Where edema <u>was</u> reported, even when Plaintiff was reporting that it hurt to walk because of edema, it was recorded either as "non-pitting edema" (R. 620 (1/27/2015), 625-26 (2/24/2015), 635 (3/10/2015), 639 (3/24/2015), 704 (9/22/2015) ("no edema" on the left leg)) or as "trace edema." (R. 687) (7/07/2015). The records as to Plaintiff's psoriasis lesions are to a similar effect. The records only discuss them on four occasions. On October 2, 2014 it is recorded that Plaintiff "denies … new skin lesions." (R. 576). They record "multiple raised red plaque lesions on lower extremities and arms" on April 14, 2015 (R. 650), and on July 15, 2015, although it records a "weeping rash present," without specifying the cause, it records "no lesions present, no areas of discoloration." (R. 693). Finally, on September 22, 2015 the record reveals a "red plaque and papular lesions on the bilateral legs." (R. 704). Plaintiff has shown no error in the ALJ's finding that Dr. Hetlinger's records do not support the degree of limitation opined.

Plaintiff also argues that the ALJ's finding that Dr. Hetlinger's opinion is inconsistent with the record is erroneous because "the plaintiff continued to suffer from significant symptoms including lesions and edema in the lower extremities that was documented by the treating sources (R. 713–733, 749–774, 887–904)" at the Community Health Center of Southeast Kansas (CSCSK). (Pl. Br. 18). She argues, "The symptoms were so severe the plaintiff was hospitalized due to the swelling in her lower extremities (R. 777)." Id. Once again, the record cited does not support her assertions. Page 777 of the record is the record of an emergency room visit at 10:20 on May 29, 2016. (R. 777). She was determined to have an emergency medical condition, with 4+ edema in both extremities, was given an IM (intramuscular) injection at 11:00 and was "discharged to home ambulatory per pov [(privately owned vehicle)]." Id. There is no indication in this record or elsewhere in the record that Plaintiff was hospitalized due to swelling in her lower extremities. As for the other records cited, the evidence is quite similar to Dr. Hetlinger's records. Lesions were only discussed in any detail in November 2015, and in June and July, 2016 and in each case it appears to be an acute exacerbation without mention of any functional limitations affecting Plaintiff's ability to work. (R. 722, 888, 891, 894, 897). As for edema, it only appears to be an issue in November 2015 and January 2016, with no functional limitations and Plaintiff was "encouraged to keep lower ext[remities] elevated when resting and to use support hose to promote circulation. Also encouraged to increase activity daily to help promote circulation and edema." (R. 715) see also (R. 722). Dr. Hetlinger's disabling limitations are as inconsistent with the records from CSCSK as they are with his own records.

15

Perhaps Plaintiff's best argument is that it was error for the ALJ to find that Dr. Hetlinger's opinion was "largely based upon the claimant's own subjective reporting concerning her symptoms." (R. 24). As Plaintiff argues, the Tenth Circuit has noted. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). Where the ALJ has no legal or evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004). A proper conclusion to that effect must be based upon evidence taken from the administrative record. Victory v. Barnhart, 121 F. App'x 819, 823-24 (10th Cir. 2005). As the Commissioner points out however, the required evidentiary basis is present here. Dr. Hetlinger's treatment records reflect Plaintiff's complaints of disability, but as noted above they contain no findings supporting disabling limitations and are inconsistent with the other record evidence. Thus, Plaintiff's complaints appear to be their only basis. While a physician must consider his patient's reports when formulating a medical opinion, he may not rely on those reports to the exclusion of the other relevant evidence.

Plaintiff also argues that the ALJ did not consider certain of the regulatory factors for evaluating a physician's opinion. Her argument appears to confuse the requirement to consider the regulatory factors when evaluating a physician's opinion with a non-existent requirement to discuss those factors in the decision. It is clear the ALJ considered the regulatory factors because he stated the correct legal standard (R. 21), recognized that Dr.

16

Hetlinger is a treating physician and discussed consistency and supportability. Id. at 22-24. And, the court will not insist on a factor-by-factor analysis if the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). That requirement has been met here. Plaintiff has shown no error in the ALJ' evaluation of Dr. Hetlinger's opinion.

Plaintiff also argues, "The ALJ does not articulate his reasoning for giving [Dr. Powell's] opinion little weight" and did not consider the appropriate regulatory factors. (Pl. Br. 21). Plaintiff's argument misses the ALJ's explanation that he accorded Dr. Powell's opinion little weight "[f]or similar reasons" to those for discounting Dr. Hetlinger's opinion. Thus, it is clear he discounted Dr. Powell's opinion because it was not consistent with the record and was based on Plaintiff's subjective complaints. The record evidence supports these findings. Even more than Dr. Hetlinger's opinion, Dr. Powell specifically stated in his medical source statement when answering item 16e requesting Plaintiff's functional limitations, that Plaintiff "states [she is] unable to work" and later instructs the reader to "see e." (R. 424). Plaintiff points to factors which tend to support Dr. Powell's opinion and argues that the ALJ did not consider those factors. (Pl. Br. 21). Such an argument merely asks the court to reweigh the evidence and substitute its judgement for that of the ALJ. It may not do so. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172.

The mere fact that there is evidence which might support a finding contrary to that of the ALJ will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff's argument that the ALJ did not articulate his bases for or cite the evidence supporting his findings that Dr. Brockenbrough's opinion is supported by the evidence and consistent with the record misses both the ALJ's finding that Dr. Brockenbrough's opinion is well-explained and the ALJ's discussion of the record evidence. As the ALJ found, Dr. Brockenbrough thoroughly explained his opinion. (R. 123, 124). Moreover, the ALJ summarized the record evidence and explained how it supports his RFC assessment. (R. 19-24). He need not explicitly repeat his earlier discussion to demonstrate that the record evidence is consistent with and supports Dr. Brockenbrough's opinion. Plaintiff does not point to record evidence which precludes either Dr. Brockenbrough's opinion or the ALJ's assessment thereof. Her allegation of error in this regard is primarily supported by her reports and the discounted opinions of Dr. Hetlinger and Dr. Powell. As noted above, the fact that the record evidence can support two inconsistent views does not make the Commissioner's determination erroneous.

## IV. Conclusion

Plaintiff's arguments that the ALJ erred in assessing RFC and in finding that she is able to perform other work existing in the economy are premised on the errors she alleges, which the court has already determined are without merit. Therefore, the court finds that Plaintiff has not demonstrated error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 22, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**